1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

ROBERT B.,

7
                              Plaintiff,

8            v.

9    NANCY A. BERRYHILL, Deputy
     Commissioner of Social Security
     Operations,

10

11                            Defendant.

Case No. 3:17-cv-05674-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12

13        Robert B. has brought this matter for judicial review of defendant's denial of his

14   applications for disability insurance and supplemental security income (SSI) benefits. The parties

15   have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. §

16   636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below,

17   the defendant's decision to deny benefits is reversed and remanded.

18                        FACTUAL AND PROCEDURAL HISTORY

19        On April 9, 2013, plaintiff filed an application for disability insurance benefits. Dkt. 8,

20   Administrative Record (AR) 20. He filed an application for SSI benefits the same day. *Id.* He

21   alleged in both applications that he became disabled beginning March 5, 2012. *Id.* These

22   applications were denied by the Social Security Administration on January 23, 2014, and

23   reconsideration was denied on April 29, 2014. *Id.* A hearing was held before an administrative

24   law judge ("ALJ"), at which plaintiff appeared and testified, as did a vocational expert. AR 16.

25

In a decision dated March 14, 2016, the ALJ found that the plaintiff could perform some jobs existing in significant numbers in the national economy and therefore that he was not disabled. AR 32. Plaintiff's request for review was denied by the Appeals Council on June 22, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. The plaintiff appealed to this Court on August 30, 2017. Dkt. 4; 20 C.F.R. §§ 404.981, 416.1481.

In his written decision, the ALJ resolved steps one and two of the five-step analysis in plaintiff's favor. AR 22. The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability and that he had the following severe impairments: "compression fracture and associated degenerative changes of the lumbar spine; chronic liver disease; adjustment disorder; mood disorder; anxiety disorder; bipolar disorder; post-traumatic stress disorder; borderline personality disorder; dementia due to head trauma; and alcohol dependence." AR 22. At step three, the ALJ found that the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 23.

In assessing the plaintiff's residual functional capacity (RFC), the ALJ found that he had the residual functional capacity

**to perform light work as defined in 20 CFR 404.1567(b) and 419.967(b), and in particular can lift and carry 20 pounds occasionally and 10 pounds frequently, can sit for up to 6 hours in an 8-hour day, can stand and walk for 6 hours total in an 8-hour day, and can push and pull as much as he can lift and carry, with the following additional limitations. He can occasionally climb ramps and stairs, climb ladders and scaffolds, stoop, kneel, crouch, and crawl. He can never work at unprotected heights or around heavy operating machinery, or operate a motor vehicle, as part of his day-to-day job. He is limited to simple, routine, repetitive tasks and simple work-related decisions. He cannot perform work at a production-rate pace (e.g., assembly line work), but can perform goal-oriented work (e.g., office cleaner). He can occasionally interact with co-workers and with the public.**

AR 25-26 (emphasis in original). Using this assessment of the plaintiff's RFC, the ALJ found that the plaintiff was not disabled because there were a number of jobs that exist in significant numbers in the national economy that the plaintiff could perform. AR 32.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits or, alternatively, for further proceedings including a new hearing. He alleges that the ALJ erred:

    (1)     in evaluating the medical evidence;

    (2)     in discounting plaintiff's testimony;

    (3)     in discounting the testimony of a lay witness;

    (4)     in assessing plaintiff's residual functional capacity; and

    (5)     in finding plaintiff could perform other jobs existing in significant
             numbers in the national economy.

For the reasons set forth below, the Court finds that the ALJ erred in evaluating medical opinion evidence concerning the plaintiff's mental condition, erred in evaluating the plaintiff's testimony about his symptoms, and erred concerning the little weight given to lay witness testimony about plaintiff's symptoms and limitations.

## DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

"If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

A.    The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff asserts that the ALJ failed to provide adequate reasons to discount the opinions of two examining doctors, William Weiss, Ph.D., and David Morgan, Ph.D.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 722. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 725. The ALJ also may draw

inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.* Essentially, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without an explanation that another medical opinion is more persuasive, or criticizing it with boiler plate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-1013 (9th Cir. 2014).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). On the other hand, an ALJ need not accept the opinion of a treating physician if that opinion is brief, conclusory, and inadequately supported by medical findings or by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81

F.3d at 830. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31.

1. Examining Psychologist Dr. Weiss

Dr. Weiss examined plaintiff on June 3, 2013. AR 283. He interviewed plaintiff about his medical history, conducted a mental status exam, administered tests for memory and concentration—the Wechsler Memory Scale, 4th Edition, and Trail Making Tests A and B—and reviewed records from January and February 2013. AR 283-93. He observed that while plaintiff was cooperative in the interview, he was "very talkative" and difficult to follow. AR 287. In a mental status examination, he found that plaintiff's interpretations of proverbs "was less than adequate," as were his abstract thinking, (based on his assessment of "similarities and differences") and his judgment and insight (based on responses to hypothetical situations). AR 287-88. Dr. Weiss also found that plaintiff was impaired in doing calculations and "serial sevens." AR 287. On the other hand, Dr. Weiss found that plaintiff's recent memory was good, his remote memory very good, his access to information good, and that he was fully oriented. AR 287-88.

Dr. Weiss used the Wechsler Memory Scale (WMS IV) to test auditory, visual, immediate, and delayed memory. AR 289. Plaintiff scored in the following percentiles, respectively: 0.2, 1, 0.3, 0.1. Id. Dr. Weiss stated that each of these scores is "[e]xtremely low." *Id.*

Dr. Weiss explained the contradiction between these scores and plaintiff's "good" and "very good" results on the memory portion of the mental status exam by noting that the latter mental status exams are "less comprehensive" than the Wechsler Memory Scale. AR 290. He opined that: "[T]here is no reason to suspect malingering in plaintiff's case. It is true that he has a personality disorder but also strongly suggested in the testing material was a dementia." *Id.*

Dr. Weiss also stated that plaintiff's score on Trail Making Test A showed "severe impairment in speed of information processing." Id. His score on Trail Making Test B showed "moderate to severe impairment in executive functioning."

Dr. Weiss diagnosed plaintiff with dementia due to head trauma, post-traumatic stress disorder, alcohol dependence, and borderline personality disorder. Dkt. 290-91. He opined:

> [Plaintiff] is not able to reason. He did not do well on the Proverb Interpretation or Judgment and Insight segments of the cognitive portion of the Mental Status Examination. He appeared to have little understanding of the etiology of his personality disorder, though he did understand where his anxiety came from. He did not fully understand why he drinks so heavily. He did understand the etiology of his memory, information processing, and executive functioning problems. Sustained concentration and persistence are extremely impaired by his dementia, post traumatic stress disorder, alcohol dependence, and borderline personality disorder. Social interaction is also markedly impaired by these problems. He does have one friend, but he does show evidence for paranoia in social relationships. Adaptation is also markedly impaired by his psychological problems. At the present time, he would not be able to maintain gainful employment. Due to the severity of his psychological issues, he is unlikely to be able to do so in the future.

AR 292. Dr. Weiss also opined that "[i]t would be in [plaintiff's] best interests if someone else were to manage his funds for him." Id.

The ALJ gave Dr. Weiss's opinion "little weight," concluding that "there are factors present which lead me to heavily discount the value of, though not to entirely disregard, [Dr. Weiss's] findings." AR 29. First, the ALJ wrote that the timing of Dr. Weiss's opinion—just a few months after the head trauma that allegedly caused plaintiff's severe conditions—"calls into question to what extent this degree of severity persisted." AR 29. The ALJ also pointed to "the relevantly normal findings and medical imaging . . . shortly after the head injury . . . , which Dr. Weiss does not address." AR 29-30. Second, the ALJ pointed to a "significant body of normal mental findings" throughout plaintiff's medical record. AR 30. He found that this record gives a better longitudinal picture of plaintiff's limitations than the single encounter Dr. Weiss had with

him. Finally, the ALJ found that Dr. Weiss did not adequately explain certain conclusions he

drew from the mental status exam. Id.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759

F.3d 995, 1009 (9th Cir. 2014). Plaintiff contends that the ALJ acted "as his own medical

expert." He contends that the ALJ lacked the expertise to make findings of inconsistency

between Dr. Weiss's opinions on the severe effects of the head injury and objective medical

notes from shortly after that injury occurred, or between Dr. Weiss's findings and other "normal

mental findings throughout the claimant's medical history." Dkt. 12, pp. 4-5. The ALJ

acknowledged that mental-status-exam findings "may well be, as Dr. Weiss says, less

comprehensive than the psychometric testing he administered." AR 30. Plaintiff asserts that this

invalidates the ALJ's reasoning. Dkt. 12, p. 5.

The Court agrees that the ALJ erred in rejecting Dr. Weiss' findings from the Wechsler

and Trail-Making tests. As the ALJ acknowledged, and the record shows, those tests are more

thorough than a routine mental-status exam. Dr. Weiss's explanation—that the mental-status

exam was "less comprehensive" than the Wechsler exam and the Trail Making Tests A and B—

shows that his opinion is based on medical evidence that is different and more precisely tailored

to detect dementia, in contrast with data collected by other experts. This refutes the ALJ's

concern about superficial inconsistency. *See* AR 283-93.

Although plaintiff's longitudinal treatment record contains some "normal mental

findings," the ALJ's findings concerning plaintiff's dementia and memory impairments are not

supported by substantial evidence. A July 2013 mental status exam found plaintiff's thought

process and productivity to be "spontaneous" and his remote memory impaired, but it also noted

that his abstract thinking was "concrete," he showed no abnormal thought content or perceptual

distortions, and he showed average intellectual functioning, adequate concentration and social judgment, true emotional insight, and "Awareness of Being Sick." AR 417-18. The exam also noted plaintiff "was appropriate [and] cooperative during intake." AR 418.

Mental status exams in June and August 2014 noted that plaintiff was fully oriented, "memory of immediate, recent, and remote events appears intact," and "[i]nsight and judgment are fair." AR 470, 492. Mental status exams showed similar results in September 2014 and March, April, and September 2015. AR 499, 518, 565, 586, 617.

These findings are superficially inconsistent with Dr. Weiss's findings. Yet, Dr. Weiss based his findings on tests that were not used by the other evaluating professionals.

Dr. Weiss determined -- based on the specialized testing that he performed -- that plaintiff has dementia with severely impaired memory, "is not able to reason," has "little understanding of the etiology of his personality disorder," was "extremely impaired" in concentration and persistence, and was "markedly impaired" in social interaction and adaptation. AR 283-293. There are no records in the medical documents to suggest that any other care provider performed the WMS-IV, or Trails A and B testing on plaintiff. Dr. Weiss found that the WMS-IV memory testing showed that plaintiff was in the extremely low memory capacity range, with percentile ranking at 0.2 (auditory memory), 1 (visual memory), 0.3 (immediate memory) and 0.1 (delayed memory). AR 289, 293. And Dr. Weiss found that plaintiff "did understand the etiology of his memory, information processing, and executive functioning problems." AR 292.

The ALJ has a duty to develop the record, and in this case, the ALJ failed to recognize that the medical opinions of Dr. Weiss, and the diagnosis of dementia, were based on testing that was not inconsistent with the results of other, less specific tests. There is no ambiguity in the record regarding the results of the more specific WMS-IV, or Trails A and B testing. The work-

related limitations in the RFC must be re-considered in light of this important evidence. Therefore, the ALJ on remand must further develop the record to ensure that the diagnosis of dementia, symptoms related to that diagnosis, and any work-related limitations resulting from the causes and symptoms of dementia, are fully explored. *See Gama v. Colvin*, No. C12-1764-RAJ, 2013 WL 5200025 (W.D. Wash. 2013) (unpublished) (remanding for further development of the record concerning evidence of dementia).

2.    Examining Psychologist Dr. Morgan

Plaintiff also contends that the ALJ erred in giving "little weight" to Dr. Morgan's opinions regarding the limitations caused by plaintiff's mental-health conditions.

Dr. Morgan examined the plaintiff in January 2015. AR 421. He reviewed DSHS records and an unspecified psychological evaluation and conducted a clinical interview and a mental status exam. AR 421-25. He found that plaintiff had an appropriate appearance and normal speech and was cooperative, but that he was anxious and "[s]omewhat agitated." AR 424. He found plaintiff's thought process and content, orientation, perception, memory, fund of knowledge, concentration, abstract thought, and insight and judgment all to be "within normal limits," and did not comment on any of these areas. AR 424-25. He diagnosed plaintiff with PTSD, alcohol dependence in early partial remission, and borderline personality disorder. AR 422.

Dr. Morgan opined that plaintiff is markedly limited in most basic work activities, including in his ability to perform activities within a schedule, maintain regular attendance, and to be punctual without special supervision, to adapt to changes, to make simple work-related decisions, and to maintain appropriate behavior. AR 423. He opined that plaintiff is moderately limited in other areas, including understanding, remembering, and persisting in tasks followed by detailed instruction and learning new tasks. *Id.*

The ALJ found that Dr. Morgan's opinion was not supported either by his own exam findings or "by anything else in the record." AR 30. The ALJ's finding regarding "anything else in the record" is not specific enough to justify rejecting Dr. Morgan's opinion. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Nonetheless, the ALJ's determination that Dr. Morgan's own findings did not support the limitations Dr. Morgan opined was both legitimate and supported. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (affirming ALJ's rejection of opinion that own doctor's findings did not support). Dr. Morgan's exam findings observed every indicator of mental health to be normal, yet Dr. Morgan's opinions on limitations stated that plaintiff is markedly limited in nearly every work function affected by cognitive or emotional conditions. *Compare* AR 423 *with* AR 424-25. Accordingly, the ALJ did not err in discounting Dr. Morgan's opinion.

3.    Other Medical Evidence

Plaintiff also lists numerous items from the treatment record and asserts that they "show[] that [plaintiff] has medical impairments which can reasonably be expected to cause all of the limitations he described in his testimony" and "undermine[] the ALJ's reasons for rejecting plaintiff's testimony." Dkt. 12, pp. 6-10. It is the ALJ's responsibility to evaluate a claimant's treatment records in the first instance, and this Court must credit the ALJ's finding if substantial evidence supports it and the ALJ did not commit legal error. *Revels,* 874 F.3d at 654. In listing numerous select facts from the record, plaintiff does not identify any source of legal error.

B.    The ALJ's Assessment of Plaintiff's Subjective Testimony

Plaintiff also contends that the ALJ erred in discounting his subjective testimony.

To reject a claimant's testimony regarding self-reported symptoms, the ALJ must provide clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). The ALJ must state what testimony he or she determined to be not credible and point to the evidence that

undermines the plaintiff's credibility. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Individuals do not all experience the same condition in exactly the same way, and different individuals may be more or less limited by symptoms than other individuals. SSR 16-3p, 2016 WL 1119029 at *4.

When gauging a plaintiff's credibility, an ALJ must engage in a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific, clear, and convincing reasons for rejecting the claimant's testimony. *Id*; *Orn v. Astrue,* 495 F.3d 625, 635 (9th Cir. 2007).

Plaintiff testified that he has difficulty with memory or concentration at all times. AR 49. He also stated that he cannot recall what has happened in a television show after he has watched a little of it and cannot remember anything that he has read immediately after having read it. AR 49-50.

He explained that he experiences daily, severe anxiety, that he feels panic to the point where it feels as if he is standing in oncoming traffic, and he stated that his panic is getting worse. AR 43-44, 51. Sometimes the panic lasts all day. AR 52. He stated he also suffers from PTSD and other mental health issues. AR 43-44. He testified that he feels unsafe about driving and becomes nervous when he drives because of panic attacks. AR 44, 48, 51-52. He said he cannot handle stress. AR 44. At times, he goes three or four days without eating, and he has no idea why that happens. AR 47.

Plaintiff testified that he takes buspirone for depression and that he went through "living H-E-L-L for two years." He stated that he has a "grocery bag size of different medications that they've had to try me on of ones that worked, ones that were the total opposite. I've been a guinea pig for the last year and a half." AR 50. He added, "the problem with me is I become not immune, but I become tolerant to the medication, so they either have to keep upping the amount or they have to change it all together because it stops working." AR 50. Plaintiff stated he has side effects from medicines, including dizziness and blurred vision, and that he does not feel safe working "in an automotive environment." AR 44. He also stated that his "medicine works better" and makes him "a little more stable" since he stopped drinking, a year and a half before. AR 52-53. He takes gabapentin and mirtazapine for sleep and eating, and in two months' time the dosage increased from 300 milligrams of gabapentin per day to three 600-milligram pills per day. AR 51. Plaintiff stated that even with the medication, the anxiety and panic attacks happen every day and they are extremely severe. AR 51-52.

Plaintiff also testified that he broke his back in 2009 and his back condition prevents him from doing "anything repetitive." AR 43-44. It prevents him in particular from working on cars. AR 44. He had recently changed the oil in his car and felt "fine" until he was sore the next day. AR 44-45. He described his back pain as a pinched nerve or a pulled muscle that happens when he moves, and that this requires him to change positions. AR 45.

Plaintiff stated that his hands "ball up and cramp," which at times makes them grip and cling to objects. AR 45. He stated that medicines do not help, although they make him less stressed. *Id.*

Plaintiff testified that he does not take medication for pain because his liver is damaged since he is a recovering alcoholic, and that he does not use any "home remedies" either. AR 46.

Plaintiff stated that in a typical day he sleeps, watches television, and tries to read, though he struggles with concentration. AR 46-47. He stated that his mind "won't slow down" and is "constantly on alert and constantly panic." AR 50. He stated that he has nightmares. AR 50-51. These make him sleep poorly once or twice per week, and also make it difficult to know what is reality when he awakens -- which makes him tired the next day. AR 54-55.

Plaintiff testified that he walks around, which helps his back stiffness. AR 48. He tries to shop for groceries only once a month because he does not "like being around people" or crowds. AR 48. He can lift a gallon of milk; however if he lifted a 50-pound sack of flour, he "would be in a world of hurt the next day". AR 49.

The ALJ asked plaintiff whether he thought he could perform a full-time job that involves putting shoes in shoeboxes on a table, if he could sit or stand at will and had two breaks and a lunch period. AR 53-54. Plaintiff said that he would be able to "put shoes in a box", as long as he was not pressured, or subject to doing "this many in this box at this time" for a production rate. AR 54.

The ALJ discounted plaintiff's testimony for three main reasons. Plaintiff contends that these were not clear and convincing reasons to reject his testimony. The Court considers these reasons in turn.

1.    Inconsistent Objective Medical Evidence on Physical Conditions

First, the ALJ found that plaintiff's "allegations as to his physical symptoms are not entirely consistent with his treatment history and resultant objective medical evidence." AR 27. Plaintiff contends that the ALJ improperly applied an "objective evidence test" in rejecting plaintiff's testimony based solely on a lack of support from objective evidence. Dkt. 12, p. 10.

An ALJ may not rely solely on a lack of objective medical evidence to reject a claimant's subjective symptom testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). But "the

medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Id.*; SSR 96-7p (superseded by SSR 16-3p, after the ALJ decision in this case).

Here, the ALJ accurately found that the objective evidence in the record generally contains benign findings that are inconsistent with the physical symptoms that plaintiff testified to. For instance, in a June 2013 physical exam by Nicholas Branting, MD, plaintiff was observed as "able to walk into the examination room without assistance," "sit comfortably," and get on and off the exam table" and "take his shoes on and off without problems." AR 297. He had normal gait and could squat, tandem walk, and walk on heels and toes. AR 298. He had normal ranges of motion in his spine. AR 298.

Cervical-spine x-rays in May 2014 showed normal results. AR 604-05. In imaging of his lumbosacral spine in May 2014, he was found to have a "[p]robable old compression fracture of L1," but "good preservation of the disk heights." AR 465. The exam was "otherwise unremarkable." *Id.* His gait was normal without lateral deviation, though ranges of motion in his trunk were limited by up to 50 percent. AR 465-66. On the other hand, he was found to demonstrate "decreased lumbar mobility with possible neural tension signs and myotome weakness" and "signs and symptoms consistent with lumbar radiculopathy." AR 467.

Plaintiff is incorrect that the ALJ erred in considering the objective medical evidence on his physical condition. The ALJ's discussion belies plaintiff's assertion that the ALJ relied *solely* on the ALJ's interpretation of that evidence. *Rollins*, 261 F.3d at 857.

2.      Inconsistent Objective Medical Evidence on Mental Conditions

The ALJ also found with respect to plaintiff's mental symptoms that his testimony was "not entirely consistent with . . . objective medical and psychological evidence." AR 28. Plaintiff asserts that this, too, was an erroneous application of an "objective evidence test." Dkt. 12, p. 10.

As with objective evidence of physical impairments, an ALJ may not reject a claimant's testimony about limitations from mental conditions based solely on a lack of objective evidence. *See Rollins*, 261 F.3d at 857. Nonetheless, the objective evidence is still a relevant factor that the ALJ is required to consider in determining the severity of the claimant's conditions. SSR 96-7p.

The ALJ's finding was not supported by substantial evidence as to plaintiff's dementia and the related memory problems, inability to successfully process information, and diminished executive functioning. As discussed above, the record shows a longitudinal pattern of "normal mental findings" on mental status examinations. These included, as the ALJ noted, findings of adequate concentration, insight, and social judgment. *See* AR 417-18, 470, 492, 499, 518, 565, 586, 617. But the ALJ's findings regarding mental processing, executive functions, and memory problems are not supported by substantial evidence. *See* AR 283-293.

Thus, the ALJ erred in considering the objective evidence regarding symptoms of plaintiff's dementia, relating to memory, executive functions, and information processing, while weighing Plaintiff's testimony. It should also be noted that plaintiff's testimony about his fear and concerns about driving are common issues when a person has dementia. *See*, Note, *Driving with Dementia: The Necessity of a Comprehensive Reporting Scheme,* 24 Elder L.J. 151, 153-156 (2016) (describing the various causes and serious symptoms of dementia and the public safety concerns when a person with dementia continues driving).

    3.   <u>Conservative Prescribed Treatment</u>

In addition to finding plaintiff's testimony inconsistent with objective medical evidence, the ALJ found that plaintiff received only "conservative treatment" for both physical and mental conditions.

With respect to the plaintiff's physical conditions, the ALJ noted that he received only "sporadic treatment" before April 2014. The record supports this finding, as it indicates that

plaintiff visited providers in January and February 2013 for the reported head trauma, AR 270, 276-78, 408; and in January 2014 seeking medication for chronic pain, AR 361-67.

The "[f]requency or extent" of treatment is a legitimate and required consideration in evaluating a claimant's symptom testimony. SSR 16-3p, at *9. The ALJ's finding that plaintiff sought only "sporadic treatment" is supported by the substantial evidence described above.

The ALJ also summarized the treatment plaintiff received for his physical conditions and characterized it as "conservative." AR 27-28. In January 2014, a treating physician, Eve Klein, M.D., recommended chronic-pain-based physical therapy and behavioral therapy. AR 363. She wrote that plaintiff expressed interest only in medication, but that she told him that treatment was "likely to be unsuccessful" for the type of pain he was reporting. *Id.* The ALJ found, and the record reflects, that plaintiff did not return to Dr. Klein and attended physical therapy only twice. *See* AR 27, 462, 467; *see* 475, 479 (missed appointments); *see also* AR 480-81 (reporting leg pain "went away" though chronic and low back pain and left-shoulder pain continued). A treating physical therapist recommended no further visits. AR 483.

Providers at Urgent Medical Care rejected plaintiff's request in January 2014 for an MRI "from head to toe;" they informed him that they needed a "specific indication" for a particular body part to refer him for testing. AR 364-65.

With respect to plaintiff's mental-health conditions, there is not substantial evidence to support the ALJ's finding that plaintiff's treatment was sporadic or conservative, considering the record as a whole. AR 28-29. If the claimant had cause for not complying with treatment recommendations, failure to follow up with certain treatment referrals is not a clear and convincing reason to discount the claimant's testimony. *Byrnes v. Shalala,* 60 F.3d 639, 641 (9th Cir. 1995). In addition, if there is not substantial evidence to show that the claimant could

reasonably remedy the condition with the treatment at issue—i.e., if the claimant had followed the recommended course of treatment, the condition was reasonably remediable and likely would have been resolved because of the efficacy of that treatment as to the particular claimant—then there is not clear and convincing evidence to discount the claimant's testimony. *Id.*

Plaintiff cites SSR 96-7p and *Garrison v. Colvin,* 759 F.3d 995, 1009-10 (9th Cir. 2014), in contending that the ALJ needed to inquire why he did not seek more treatment before rejecting his testimony. *See* SSR 96-7p ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.").

The record shows that side effects of medication, and the effect of the plaintiff's mental impairments, may have affected the types of treatment he underwent. Plaintiff participated in talk therapy, tried many different medications to manage his mental conditions, and requested in-patient hospitalization when he believed his condition and symptoms caused him to be suicidal. AR 291, 384, 401, 418, 421, 518-619. In this case, there is no evidence that the ALJ explored whether the treatment prescribed for the plaintiff (various drug therapies, and counseling) was, or was not, "conservative," accounting for plaintiff's diagnoses and the life events that he attempted to adapt to. *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (plaintiff may have good reasons for failing to comply with certain treatment where the noncompliance is due to mental illness rather than personal preference). Symptoms may vary, and at times there may be periods where a disabled person has fewer problems; this does not mean that the person's disability has disappeared or that employment would be manageable. *Holohan v. Massanari*, 246 F.3d 1195,

1205, 1207-08 (9th Cir. 2001) (person who suffers from severe panic attacks, anxiety and depression may have some improvement but the waxing and waning of symptoms must be considered in the context of the entire record).

The ALJ's reasoning about the plaintiff's failure to seek treatment for physical and mental conditions failed to consider that the record contains substantial evidence that plaintiff's decision-making may be affected by his mental conditions, including dementia; a person with a mental illness such as dementia might have difficulty remembering or deciding to obtain regular treatment of physical ailments if his or her mental illness causes memory and executive function problems. *See, e.g.,* AR 382-384 (psychiatric intake at Kaiser Permanente, on 4-15-2014, describing plaintiff's inability to recall all the medications he had tried, his struggle to find or maintain employment, his inability to obtain insurance and consequential inability to keep up with a plan for medical treatment, and also his history of several head injuries – the medical professional offered plaintiff in-patient hospitalization "because of the severity of the patient's mood symptoms" but "he didn't think that his symptoms were bad enough to need hospitalization. . . . He does not appear to meet the criteria for an involuntary commitment at this time."); *see generally* S. Gardner et al., *Dementia and Legal Capacity: What Lawyers Should Know When Dealing With Expert Witnesses*, 6 NAELA J., Fall 2010, at 132-33 (dementia is a complex mental condition; experts use many diagnostic tests, including the Wechsler Memory Scale (WMS IV) to evaluate decision-making capacity).

The ALJ briefly found that plaintiff's activities of daily living—including taking out the garbage, loading the dishwasher, and doing yard work—further detract from the credibility of his allegations. AR 30. But the ALJ did not rely on this finding and it was not necessary to his

conclusion. Accordingly, the Court need not consider whether this was a clear and convincing

reason to discount plaintiff's testimony.

C.    The ALJ's Assessment of Lay Witness Testimony

Plaintiff also contends that the ALJ erred in rejecting lay-witness testimony about his

impairments.

Plaintiff's mother submitted a third-party function report in April 2013. AR 208-15. Like

plaintiff, she reported that plaintiff's ability to work is impaired by a lack of concentration,

confusion, and depression, and that his bad back made him unable to repair cars anymore. AR

208, 213. She wrote that he can't relax and has "severe ADHD," and that he is afraid to drive or

go out in public. AR 209. She also stated that she did not know the answer to most questions

about plaintiff's activities, and that she spent "not much" time with him, only talking on the

phone. AR 209-15.

The ALJ found that his mother's testimony was consistent with plaintiff's own testimony,

and that her testimony therefore gave some support to it. AR 26-27. But the ALJ found that this

consistency is outweighed by the considerations that led him to discount plaintiff's testimony. He

added that he "cannot entirely discount the possibility that this third-party report may have been

partly influenced by a desire to help the author's son, the claimant." He therefore considered Ms.

Lapp's testimony but stated it did not change his decision. AR 27.

The ALJ's stated concern that, because she was plaintiff's mother, she may have been

motivated by a desire to help her son does not appear to have a basis in the record and is not a

germane reason for rejecting her lay testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th

Cir. 1993) ("[W]e have held that friends and family members in a position to observe a

claimant's symptoms and daily activities are competent to testify as to her condition."). As

discussed above, the ALJ's reasons for discounting plaintiff's testimony were, in part, not

supported by substantial evidence. On remand, the ALJ should also review and re-consider plaintiff's mother's testimony and any additional third party testimony or other evidence from lay witnesses that may be relevant to whether plaintiff is, or is not, disabled.

D.     RFC Assessment and Step-Five Finding

Finally, plaintiff contends that the RFC did not contain limitations shown by the medical opinion evidence, treatment record, his testimony, and lay-witness testimony. He asserts that because the RFC was incomplete, the ALJ's step-five finding—that he can perform jobs existing in significant numbers in the national economy—is also erroneous. Because the Court already has concluded that the ALJ erred in reviewing the evidence of plaintiff's memory problems, executive functioning, and information processing as symptoms of dementia, and erroneously rejected plaintiff's subjective symptom testimony about these psychological and mental conditions, and that this matter should be reversed and remanded for further consideration, *see supra*, section II, the remainder of the sequential disability evaluation process, including step five, will need to be assessed anew on remand.

REMEDY

Plaintiff argues that this case should be remanded for an award of benefits. Dkt. 12 at 2, 18-19. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).

A direct award of benefits would be warranted if the following conditions are met: First, the record has been fully developed; second, there would be no useful purpose served by conducting further administrative proceedings; third, the ALJ's reasons for rejecting evidence (claimant's testimony or medical opinion) are not legally sufficient; fourth, if the evidence that was rejected by the ALJ were instead given full credit as being true, then the ALJ would be

required on remand to find that the claimant is disabled; and fifth, the reviewing court has no serious doubts as to whether the claimant is disabled. *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (amended January 25, 2018); *Revels*, 874 F.3d at 668.

If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon*, 880 F.3d at 1045 (quoting *Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090, (9th Cir. 2014). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels*, 874 F.3d at 668.

As discussed above, the ALJ failed to provide legally sufficient reasons for discounting the opinion of Dr. Weiss concerning plaintiff's dementia and symptoms that included memory problems, deficits in executive functioning, and problems with information processing; and the ALJ failed to properly consider plaintiff's subjective symptom testimony and the testimony of a lay witness.

Accordingly, issues remain regarding the evidence in the record concerning plaintiff's functional limitations. Remand for further consideration of those issues is warranted. Specifically, on remand the Commissioner shall re-consider the medical evidence provided by Dr. Weiss and Dr. Morgan, and take additional medical evidence to clarify the record concerning the plaintiff's diagnosis of dementia, the symptoms relating to dementia, re-evaluate plaintiff's subjective symptom testimony (and take additional testimony from plaintiff, if warranted) as to his dementia. The ALJ must also re-evaluate the existing lay witness testimony regarding any symptoms of dementia, and may also take additional lay witness evidence as necessary. The ALJ will then address the RFC and the issue of whether plaintiff can perform jobs existing in significant numbers in the national economy under Step Five.

## CONCLUSION

Based on the foregoing discussion, the undersigned finds the ALJ erred in determining that plaintiff was not disabled. Defendant's decision to deny benefits is therefore REVERSED AND REMANDED for further administrative proceedings.

Dated this 17th day of October, 2018.


_____
Theresa L. Fricke
United States Magistrate Judge